596 A.2d 665

Ina Lou PARLETTE

v.

Charles Winfield PARLETTE, et al.

No. 1763, Sept. Term, 1990.

Court of Special Appeals of Maryland.

Oct. 3, 1991.

630

Robert B. Suder (Suder & Suder, on the brief), Baltimore, for appellant.

Jeffrey A. Krew (Reese and Carney, on the brief), Columbia, for appellees.

Submitted before FISCHER, CATHELL and MOTZ, JJ.

MOTZ, Judge.

Appellant, Ina Lou Parlette ("Ms. Parlette") brought suit in the Circuit Court for Howard County against her former husband, Charles Winfield Parlette ("Mr. Parlette"), asserting that she was the intended beneficiary of their deceased son's life insurance policy. Notwithstanding the fact that Mr. Parlette alone was listed as the beneficiary on the policy, Ms. Parlette claimed that their son, Wayne, intended his mother, not his father, to benefit from the policy. At the close of Ms. Parlette's case before a Howard County jury, the circuit court granted Mr. Parlette's motion for judgment as well as declaratory judgment in Mr. Parlette's favor. We affirm in part and reverse in part.

### Facts and Proceedings Below

Mr. and Ms. Parlette were divorced in 1970. On January 19, 1985, Mr. Parlette, who was, and for many years had been, employed as an agent for Prudential Insurance Company of America ("Prudential"), sold a life insurance policy to their son Wayne, who was then 29. In exchange for Wayne's monthly payment of $62.50, Prudential agreed to pay the beneficiary named in the policy fifty thousand dollars ($50,000) in the event of Wayne's death. The policy

named Mr. Parlette as Wayne's sole beneficiary [1] and included the following language:

> You may designate or change a beneficiary. Your request must be in writing and in a form that meets our needs. It will take effect only when we file it at our Home Office; this will be after you send the contract to us to be endorsed, if we ask you to do so. Then any previous beneficiary's interest will end as of the date of the request. It will end then even if the Insured is not living when we file the request.

After purchasing the policy, Wayne paid the premiums each month.

On March 3, 1987, Wayne Parlette was diagnosed as having cancer. He died on July 15, 1988. Shortly after her son's death, Ms. Parlette learned, for the first time, that Wayne owned this policy and that Mr. Parlette was his designated beneficiary. Upon being told by Wayne's friends and brothers that Wayne actually intended her to receive the benefits of his life insurance, Ms. Parlette initiated this action against Mr. Parlette and Prudential. (In August 1989, the circuit court ordered Ms. Parlette and Mr. Parlette to settle the dispute between themselves prior to pursuing further any claim against Prudential.)

Ms. Parlette's complaint as finally amended set forth four counts. First, she sought a declaratory judgment that she was the intended third party beneficiary of the insurance policy. Second, she charged Mr. Parlette with breach of contract, on the theory that she was the intended third party beneficiary of an oral contract between Mr. Parlette and Wayne, in which Mr. Parlette promised Wayne (and

---

1. The $50,000 policy was the second of four life insurance plans Mr. Parlette sold to Wayne. The other three policies, purchased in January 1975, January 1988, and February 1988, respectively, had a combined value of $25,000. In each of the other policies, as in the $50,000 policy, Mr. Parlette was Wayne's named beneficiary. Ms. Parlette alleged in her first complaint that she was the intended beneficiary of all four policies; she amended her complaint to seek payment on the $50,000 policy alone.

thereafter breached his promise) that he would see to it that Ms. Parlette was the designated beneficiary of the policy. Third, she alleged negligence, based on Mr. Parlette's failure to see that she was the beneficiary of the policy. Ms. Parlette's final count asserted that Mr. Parlette acted fraudulently when he designated himself, rather than Ms. Parlette, as the policy's beneficiary.

At trial, Kenneth Robert Welk, Jr., a close friend of Wayne's, testified that he was present at the time and place that Mr. Parlette sold Wayne the $50,000 policy. According to Welk, Wayne bought the policy from his father at his father's home and "instructed his father to make his mother the beneficiary and his father had no problem with that." Welk further testified that Wayne signed a blank insurance application which Mr. Parlette then filled in—including Mr. Parlette's own name as beneficiary—in Wayne's absence. To support his claim, Welk pointed to the fact that all of the handwritten portions of the policy are in Mr. Parlette's handwriting, except for Wayne's signature.[2]

Moreover, Welk asserted that, to the best of his knowledge, Wayne never saw the completed policy. Welk posited that Mr. Parlette deliberately failed to send the policy to Wayne, in order to conceal that the policy's named beneficiary was Mr. Parlette, not Ms. Parlette. Welk and other witnesses testified that Wayne had a much closer and more loving relationship with his mother than with his father. They also testified that the policy was not found among

---

**2.** When called as an adverse witness by Ms. Parlette, Mr. Parlette testified that, in selling Wayne the $50,000 policy, he followed his normal procedure of filling out an insurance application in the presence of his client. Mr. Parlette stated that he filled out the application in his own handwriting, after Wayne provided him with such information as his "date of birth, age and so forth, [his] address ..." Mr. Parlette further testified that, after he wrote the information provided by Wayne on the insurance application (presumably including the designation of beneficiary), *then* Wayne signed the application. Finally, Mr. Parlette testified that, as soon as he received the insurance policy, he read Wayne the important parts of the policy—including the designation of beneficiary—and then gave the policy to Wayne.

Wayne's belongings when he died. They conceded, however, that Wayne did not have a permanent residence in which he kept his belongings and that his papers were dispersed among a variety of locations, including his car.

Wayne's girlfriend and brothers each testified that, although they had not seen the policy, Wayne intended to name Ms. Parlette as his beneficiary. They testified that Wayne told them that he intended Ms. Parlette to benefit from his insurance policy, and/or that Wayne was closer to Ms. Parlette than to Mr. Parlette and that, therefore, Wayne *must* have intended to name Ms. Parlette as his beneficiary.

At the close of Ms. Parlette's case, the circuit court granted Mr. Parlette's motion for judgment as to all four counts. The basis for this decision was the lower court's belief that Ms. Parlette could not properly bring a complaint on any of these grounds and that Wayne's estate was the only proper plaintiff to pursue the claims. Thus, the circuit court reasoned as to the breach of contract claim:

> Generally the rule is that ordinarily an action on an insurance policy may be brought by the parties to the contract and third persons in privity with them ... and, of course, there must be privity; ... Frankly, there *wasn't any privity here* ... there was simply *no privity proven*, so the court will grant judgment in the second count [breach of contract] (emphasis added).

Similarly, with regard to the negligence count, the lower court found:

> the negligence would, once again, be between the insured, Wayne, and the insurance company and/or its agent [Mr. Parlette] and *not with the third party beneficiary;* therefore, I will grant the motion on the third count, negligence (emphasis added).

And with regard to the fraud count, the court found:

> the fraud must be between the parties involved; that is Wayne and Winfield. Of course, needless to say, that had the matter been brought by the Estate of Wayne

then that would have been something of an entirely different situation.

The circuit court concluded by stating that it would "grant a motion for judgment in the declaratory judgment for the same reasons [as those on which it granted judgment in the other counts]."

### *Legal Analysis*

The essential premise of the decision of the court below to grant Mr. Parlette's motion for judgment was that Ms. Parlette was not a proper party to assert the claims set forth in her complaint. Because that premise was erroneous, except with regard to the fraud claim, we reverse as to all counts, except the fraud count.

### (1)

To prevail in an action for fraud, a plaintiff must show: (a) that a representation made by the defendant was false; (b) that its falsity was known to defendant; (c) that the representation was made for the purposes of defrauding the plaintiff; (d) that the plaintiff not only relied upon the representation, but had the right to do so and would not have done the thing from which the damage resulted if it had not been made; and (e) that plaintiff suffered damage directly resulting from the defendant's misrepresentation. *Martens Chevrolet, Inc. v. Seney,* 292 Md. 328, 337, 439 A.2d 534 (1982); *MacGill v. Blue Cross of Maryland, Inc.,* 77 Md.App. 613, 621, 551 A.2d 501, *cert. denied,* 315 Md. 692, 556 A.2d 673 (1989). The circuit court was correct in concluding that Ms. Parlette, who was not a party to any misrepresentations made by Mr. Parlette to Wayne, who never even knew of the alleged misrepresentations until after Wayne's death, and who, therefore, could not have relied on these alleged misrepresentations, is not the proper plaintiff for this fraud claim.[3]

---

**3.** Although in her complaint Ms. Parlette alleged that she had relied on Mr. Parlette's failure to see to it that she would be named as the

■ The only authority which Ms. Parlette offers in support of her right to assert a fraud claim here is the following language from *Flaherty v. Weinberg,* 303 Md. 116, 492 A.2d 618 (1985) stating that the traditional American rule is:

> that a third party could recover against the attorney [for another person] only in cases involving fraud or collusion.

303 Md. at 122, 492 A.2d 618 (*citing National Savings Bank v. Ward,* 100 U.S. 195, 205–06, 25 L.Ed. 621 (1880)) (footnote omitted). Ms. Parlette argues that this quotation "reiterated the law in Maryland which has long stated that privity is not required in cases of fraud." In fact, "privity" is a term of contract law which has nothing to do with causes of action for fraud. Even if what Ms. Parlette means is that her injury entitles her to bring a fraud claim against Mr. Parlette, despite her being neither present at nor a recipient of the alleged misrepresentation, the language in *Flaherty* still does not aid her. This is so because the "fraud" to which the *Flaherty* court referred was deceitful representations made directly by a lawyer to a nonclient, with the *intent* that the nonclient rely on them; such misrepresentations are actionable by a nonclient. *See, e.g., First National Bank v. Shpritz,* 63 Md.App. 623, 632, 493 A.2d 410, *cert. denied,* 304 Md. 297, 498 A.2d 1184 (1985). When such acts are demonstrated, a third party may well be able to prove the detrimental reliance which is so critical to a fraud claim, but which is so clearly missing in the fraud claim asserted here.

### (2)

We turn then to Ms. Parlette's remaining causes of action: breach of contract, negligence, and declaratory judgment.

---

beneficiary of the policy, she introduced *no* evidence of this reliance. Indeed, she conceded, under oath, that she did not even know of the policy until after Wayne's death.

 Originally at common law, even if a contract was for the benefit of a third person, privity between plaintiff and defendant was required to maintain an action on that contract. *See MacKubin v. Curtiss–Wright Corp.*, 190 Md. 52, 57 A.2d 318 (1948). Ever since 1866 however, Maryland, like most other jurisdictions, has recognized the doctrine of third party beneficiary. *See Small v. Schaefer*, 24 Md. 143 (1866). That doctrine permits a person for whose benefit a contract is made to maintain an action on it without any privity of contract. *See Marlboro Shirt Co. v. American District Tel. Co.*, 196 Md. 565, 77 A.2d 776 (1951). In order for a person to recover as a third party beneficiary, he or she must show that the parties to the contract clearly intended that the third party benefit from it. *Shillman v. Hobstetter*, 249 Md. 678, 687, 241 A.2d 570 (1968) (quoting *Marlboro Shirt, supra*, 196 Md. at 569, 77 A.2d 776). An incidental beneficiary, one who benefits from the contract although the benefit was not specifically intended or planned by the contracting parties, has no rights against the promisee or promisor. *Shillman*, 249 Md. at 688, 241 A.2d 570.

 Here, there is no question that Ms. Parlette alleges that she was an intended, rather than merely incidental, beneficiary of a contract. This contract was one between Mr. Parlette and Wayne whereby in exchange for Wayne's payment of the insurance premiums, Mr. Parlette "agreed to follow Wayne's instructions and to enter upon the application for insurance the name of his mother, Ina Lou Parlette, as the designated beneficiary." Further, there is no doubt that Ms. Parlette asserts that Mr. Parlette breached this contract, violating his "contractual duty" to both Wayne and Ms. Parlette. Thus, the circuit court erred in concluding that Mr. Parlette's motion for judgment should be granted on the breach of contract count because there was no privity; Ms. Parlette, as a third party beneficiary, is

entitled to bring an action for breach of contract.[4]

 We also hold that Ms. Parlette may assert her negligence claim. It is well established that "an insurance agent or broker" may be liable in a negligence action "to an insured for the broker's or agent's failure to exercise reasonable diligence and due care." *Canatella v. Davis,* 264 Md. 190, 206, 286 A.2d 122 (1972). Moreover, although there does not seem to be any Maryland law directly on point, other jurisdictions have held that a third party can recover in a negligence action against another's insurance agent, *if* the third party can demonstrate that, but for the agent's negligence, the third party would have benefited from the insurance policy. *See* 16A J.A. Appleman & J. Appleman, *Insurance Law and Practice,* §§ 8831, 8836, 8845 (1981 ed. & Supp.1990) (and numerous cases cited therein).

 In *Flaherty v. Weinberg, supra,* the Court of Appeals set forth a very similar rule as to the right of third parties to recover from another's lawyer. The *Flaherty* Court held that a third party could recover from another's attorney even though the traditionally sacrosanct attorney-client relationship did not ordinarily give rise to liability to a third person for the negligence of another's attorney. To recover, however, a third party must prove that the intent to benefit that party was "a direct purpose of the transaction," as well as allege the other elements of a negligence

---

**4.** Neither *Ringler v. Ringler,* 156 Md. 270, 144 A. 221 (1928), nor *Daly v. Daly,* 138 Md. 155, 113 A. 643 (1921), which were relied upon by the court below, are to the contrary. Both *Ringler* and *Daly* simply deal with the kind and amount of evidence necessary to prove that an insured has changed the designated beneficiary on his or her policy. Their holdings are inapposite here because there was no claim by Ms. Parlette that Wayne intended to change the policy beneficiary. Rather, Ms. Parlette's claim was that Wayne originally designated her his beneficiary, contracted with his father to this effect, and believed that his father had carried out his wishes. Moreover, *Daly* absolutely refutes Mr. Parlette's suggestion that a third party must be named in the insurance policy in order to bring suit. In *Daly,* as here, a third party, not named in the insurance policy, sued claiming she was the intended beneficiary of it; indeed, she recovered on that basis.

cause of action. 303 Md. at 131, 492 A.2d 618. There seems to be no reason why that rule would not be equally applicable here. Ms. Parlette has both alleged that a direct purpose of the transaction between Wayne and Mr. Parlette was to benefit her and stated the other elements of a negligence cause of action. We hold that an intended beneficiary can recover from another's insurance agent if the intended beneficiary can prove that intent to benefit him, or her, was a direct purpose of the transaction between insured and agent *and* the other elements of negligence. Accordingly, the circuit court was in error when it granted a motion for judgment as to the negligence count just because it believed that Ms. Parlette, as a third party, could not bring an action for negligence against Mr. Parlette.

After stating its views as to Ms. Parlette's inability as a third party to bring a contract, negligence or fraud action, the trial court concluded that it "would grant a motion for summary judgment on the declaratory judgment for the same reasons." Because we have concluded that the circuit court's findings with regard to the contract and negligence claims were error, we must also reverse its catchall finding with regard to the declaratory judgment count.[5]

(3)

Alternatively, Mr. Parlette argues that, regardless of the correctness of the lower court's holdings as to privity or the rights of third parties, its decision granting its motion for judgment should be affirmed in all respects because Ms. Parlette introduced insufficient evidence on any claim to present a jury question.

---

5. Ms. Parlette does not assert that the circuit court erred in failing to render a declaration of rights of the parties as required by the Declaratory Judgments Act, Md.Cts. & Jud.Proc.Code Ann. § 3–401, *et seq.* (1974, 1989 repl. vol.). Accordingly, the issue is not before us. Nevertheless, we note that even if the trial court determines that a plaintiff is not entitled to the result he seeks, the court must issue a declaration of rights to the parties which "clearly delineates" those rights and "terminates" the "controversy" between them. *Dart Drug v. Hechinger Co.,* 272 Md. 15, 29, 320 A.2d 266 (1974).

In a jury trial, when a motion for judgment is made at the close of the plaintiff's case, "the court shall consider all evidence and inferences in the light most favorable to the party against whom the motion is made." Md. Rule 2–519(b); *Cavacos v. Sarwar*, 313 Md. 248, 250, 545 A.2d 46 (1988). If there is any competent evidence, however slight, tending to support plaintiff's right to recover, the case should be submitted to the jury and the motion denied. *Montgomery Ward & Co. v. McFarland*, 21 Md.App. 501, 513, 319 A.2d 824 (1974).

In order to recover on a breach of contract claim, a plaintiff must prove that two or more parties formed a contract, that the defendant breached the contract, and that the plaintiff suffered actual damages as a result of the breach. *See Continental Masonry Co. v. Verdel Construction Co.*, 279 Md. 476, 480, 369 A.2d 566 (1977); *Post v. Gillespie*, 219 Md. 378, 385, 149 A.2d 391 (1959); *Della Ratta, Inc. v. American Better Comm'ty Developers, Inc.*, 38 Md.App. 119, 138–139, 380 A.2d 627 (1977). In addition, a plaintiff seeking to enforce a contract to which he or she was not a formal party must clearly demonstrate that the contract was expressly made for the plaintiff's benefit and that the plaintiff was intended to be the primary beneficiary of the contract. *Shillman v. Hobstetter, supra*, 249 Md. at 688–89, 241 A.2d 570. Here, Ms. Parlette introduced evidence that: (a) Wayne and Mr. Parlette formed an oral contract in which Wayne agreed to purchase insurance from Mr. Parlette in exchange for, among other things, Mr. Parlette's promise that Ms. Parlette would be the beneficiary of the policy; (b) Mr. Parlette breached his promise by failing to see to it that Ms. Parlette was named as beneficiary of the policy; and (c) Ms. Parlette was therefore deprived of the benefit of the contract, contrary to the contract's express intent.

In order to recover on a negligence claim, a plaintiff must present evidence that the defendant owed the

plaintiff a duty of care, the defendant breached that duty, and the defendant was the proximate cause of injury to the plaintiff. *See Read Drug & Chemical Co. v. Colwill Construction Co. Inc.*, 250 Md. 406, 412, 243 A.2d 548 (1968). In asserting her claim of negligence against Mr. Parlette, Ms. Parlette introduced evidence that: (a) Wayne purchased insurance from Mr. Parlette, an authorized insurance agent who owed a duty to the insured (Wayne); (b) Mr. Parlette undertook to see to it that Ms. Parlette was the designated beneficiary of Wayne's insurance policy, thereby creating a duty owed by Mr. Parlette to Ms. Parlette; and (c) Mr. Parlette negligently failed to carry out this undertaking, and for this reason, Ms. Parlette was damaged. It may be that the evidence Ms. Parlette relied upon for both counts (largely Welk's testimony) would not have persuaded a jury; however, applying the mandate of Rule 2–519(b) "to consider all evidence and inferences in the light most favorable" to Ms. Parlette, we cannot find that it was totally without probative value.[6] Accordingly, Mr. Parlette's alternative argument also fails.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEE.

---

[6] Nor did the trial court so find. Its decision to grant the motion for judgment was entirely based on its erroneous legal conclusions.