**Regina K. HILL**

v.

**BRUSH ENGINEERED MATERIALS, INC. et al.**

**No. CIV. WMN–05–254.**

United States District Court,
D. Maryland.

Aug. 10, 2005.

George B. Levasseur, Jr., George B. Levasseur Jr., PA, Cumberland, MD, Ruben Honik, Sherrie J. Cohen, Stephan Matanovic, Golomb and Honik, Philadelphia, PA, for Regina K. Hill.

William J. Murphy, John J. Connolly, Murphy and Shaffer LLC, Baltimore, MD, Jeffery D. Ubersax, Jones Day North Point, Cleveland, OH, Steven E. Leder, The Leder Law Group LLC, Towson, MD, for Brush Engineered Materials, Inc. et al.

## MEMORANDUM

NICKERSON, Senior District Judge.

Before the Court are two concurrent motions: a Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction filed by Defendant Brush Engineered Materials, Inc. (BEMI), Paper No. 25, and a Rule 12(b)(6) Motion to Dismiss Count IV filed by Defendants BEMI and Brush Wellman, Inc. (Brush), Paper No. 26. Through these motions, Defendants also seek dismissal of Plaintiff's punitive damages claims and all claims against BEMI. For the reasons that follow, the Court will grant Defendant BEMI's jurisdictional motion and grant Defendants' partial motion to dismiss with leave to amend. The Court will also dismiss Plaintiff's punitive damages claims and all claims against BEMI.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Regina Hill alleges the following facts in her Complaint. From 1992 to 2004, she was employed as a dental technician at the Roy–L Dental Lab in LaVale, Maryland. While there, she performed various tasks involving beryllium-containing dental alloys, which produced respirable beryllium dust. In 2005, she was diagnosed with chronic beryllium disease.

Plaintiff does not dispute that Defendants BEMI and Brush are separate corporate entities and that BEMI has never manufactured or sold any form of beryllium. Defendant BEMI is an Ohio-based holding company and Brush's parent company. Defendant Brush is a manufacturer of beryllium and beryllium-containing products. Plaintiff alleges that Defendant Brush sold its products to Defendants Pentron Laboratory Technologies, LLC, (Pentron) and Jensen Industries, Inc. (Jensen) and that these entities supplied

beryllium-containing products to Roy–L Dental Lab.

On January 28, 2005, Plaintiff filed suit against Defendants BEMI, Brush, Jensen, and Pentron. Plaintiff claims that Defendants manufactured, assembled, or distributed beryllium-containing products used at Roy–L Dental Lab. She claims workplace exposure to beryllium caused her to contract chronic beryllium disease. Plaintiff's Complaint lists four causes of action: negligence (Count I), strict liability (Count II), breach of warranty (Count III), and fraudulent concealment and civil conspiracy (Count IV)[1].

## II. DISCUSSION

### A. Personal jurisdiction over BEMI

■ Defendant BEMI moves, pursuant to Federal Rule of Civil Procedure 12(b)(2), to dismiss all claims against it on the grounds that this Court lacks personal jurisdiction over it. To properly adjudicate a Rule 12(b)(2) personal jurisdiction challenge, the Fourth Circuit directs that "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir.2003) (citation omitted). But when, as here, a district court addresses the motion "without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction," with the court taking "all disputed facts and reasonable inferences in favor of the plaintiff." *Id.*

A district court's exercise of personal jurisdiction over a nonresident defendant must comply with the requirements of both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment. *Id.* The Court of Appeals of Maryland has consistently held that Maryland's long-arm statute expands the exercise of personal jurisdiction to the limits set by the Due Process Clause of the Constitution. *E.g., Mohamed v. Michael,* 279 Md. 653, 370 A.2d 551, 553 (1977); *Camelback Ski Corporation v. Behning,* 307 Md. 270, 513 A.2d 874, 876 (1986). Thus, the question becomes whether a court's exercise of jurisdiction comports with the demands of due process. *Carefirst,* 334 F.3d at 396–97. Such demands are met if the nonresident defendant has "minimum contacts" with the forum, such that subjecting him to jurisdiction in that state "does not offend traditional notions of fair play and substantial justice." *Id.* at 397 (quoting *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

■ A court may exert either general or specific jurisdiction over a nonresident defendant. *Helicopteros Nacionales de Colom., S.A., v. Hall,* 466 U.S. 408, 414–415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Where the suit does not arise out of the defendant's contacts with the forum, a court may exert its general jurisdiction over the defendant only if the defendant's activities in the state have been "continuous and systematic." *Helicopteros,* 466 U.S. at 415, 466 U.S. 408. If the suit arises out of defendant's contacts with the state, the court must examine the circumstances of the case to determine if it has specific jurisdiction over the defendant. *See id.* at 414, 104 S.Ct. 1868. In determining whether specific jurisdiction exists,

---

1. Count IV encompasses a hodgepodge of claims, including a claim of fraudulent misrepresentation and what appear to be numerous claims of civil conspiracy. To the extent that Plaintiff seeks to amend her Complaint, the Court notes that severing the claims into separate counts should facilitate Plaintiff's necessary efforts to plead these claims with particularity and put Defendants on proper notice of their alleged misconduct.

the Fourth Circuit considers: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Carefirst*, 334 F.3d at 397 (quotations and citations omitted).

Here, the undisputed statements of fact show that BEMI's activities in Maryland do not provide grounds for Maryland to assert general jurisdiction. BEMI's Vice President, Treasurer and Secretary, Michael C. Hasychak, asserts by sworn affidavit that BEMI has never maintained an office or conducted business in Maryland, nor has it owned property or maintained bank accounts in the state. It has never had employees, agents or representatives conduct business within Maryland or visit the state for business purposes, nor has it advertised or solicited business in the state. Plaintiff does not dispute these assertions.

Instead, Plaintiff contends that this Court should assert specific jurisdiction over BEMI because it has negligently designed and implemented environmental, health, and safety policies that caused Plaintiff's injuries.[2] She claims that "BEMI established and enforced these policies for its subsidiaries," thereby establishing its corporate liability. Pl.'s Opp'n to BEMI's Mot. to Dismiss at 5. To support this contention, Plaintiff submits a document she dubs "Brush Engineered Materials, Inc. Environmental Health & Safety Policy," although the actual title reads "Brush Wellman Engineered Materials Environmental, Health & Safety Policy."[3] *Compare* Pl.'s Opp'n at 5 *with id.* Ex. 1. Contrary to Plaintiff's assertions, the names "Brush Engineered Materials, Inc." and "BEMI" do not appear anywhere on the exhibit.[4]

Aside from the erroneously attributed Brush policy, Plaintiff does not specifically allege any independent tortious conduct by BEMI. Instead, she seeks to hold BEMI liable for the conduct of its subsidiaries, under a theory of liability that she has already abandoned. *See supra* note 1. For example, she claims BEMI breached its duty "to design reasonably safe products, to communicate an adequate warning of the dangers involved in the use of their products, and to provide adequate instructions for product use to avoid or minimize dangers." Pl.'s Opp'n to BEMI's Mot. at 5. In making these assertions, however, Plaintiff does not contest BEMI's sworn

---

**2.** In opposition to BEMI's motion, Plaintiff maintains that BEMI's parent relationship to its subsidiary is not the basis for this Court's jurisdiction over BEMI. Pl.'s Opp'n to BEMI's Mot. to Dismiss at 4 n. 6 (stating emphatically that BEMI's arguments against piercing the corporate veil "are a red herring and should be disregarded"); *but see id.* stating, at 2, "BEMI, as the corporate parent, dictates ... policies for all of its subsidiaries" and *ibid.* n. 2, stating "BEMI by and through its many subsidiaries, operates manufacturing and other facilities ...." Notwithstanding these somewhat inconsistent statements, which seem to indicate that Plaintiff does in fact want this Court to consider piercing BEMI's corporate veil, Plaintiff insists that BEMI should be subject to this Court's jurisdiction to answer for its "independent tortious conduct" in Maryland. *Id.* The Court accepts Plaintiff's assurance that piercing the corporate veil is not at issue here and will not consider it further. The Court's inquiry is focused on BEMI's independent conduct.

**3.** Plaintiff cites this document as "prima facie evidence" of BEMI's corporate liability on the case. *Id.*

**4.** BEMI addresses this discrepancy in the Affidavit of Michael D. Anderson, President of Brush Wellman Inc., in which he unequivocally states that the policy is that of his company, Brush, and not that of BEMI. Def. BEMI's Reply Ex. 1 (Anderson Aff. ¶ 4).

statements that it "operates only as a holding company" that has never manufactured or sold beryllium products.

■ This Court does not have jurisdiction over BEMI in this matter. The Fourth Circuit states "[a]lthough it is true that the plaintiff opposing a Rule 12(b)(2) motion to dismiss for lack of jurisdiction is entitled to have all reasonable inferences from the parties' proof drawn in [her] favor, district courts are not required to look solely to the plaintiff's proof in drawing those inferences." *Mylan Laboratories, Inc. v. Akzo, N.V.,* 2 F.3d 56, 62 (4th Cir.1993). Plaintiff's only support for her argument that BEMI is subject to personal jurisdiction in Maryland is the Brush policy, which in fact undercuts her argument. In light of BEMI's unchallenged affidavit and the fact that the policy is clearly that of Brush and not BEMI, Plaintiff's broad and unsupported claims do not even make a prima facie showing of personal jurisdiction.

■ Plaintiff requests leave to conduct jurisdictional discovery in the event this Court finds it lacks grounds to exercise personal jurisdiction over BEMI. "District courts have broad discretion in [their] resolution of discovery problems." *Mylan,* 2 F.3d at 64 (internal citations and quotations omitted). The Fourth Circuit instructs that although "limited discovery may be warranted to explore jurisdictional facts in some cases," *id.,* "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Carefirst,* 334 F.3d at 402 (internal citations and quotations omitted).[5]

Here, Plaintiff has offered nothing but erroneous or conclusory assertions about BEMI's contacts with Maryland. She has failed to proffer any further facts that, if proven, would affect this Court's exercise of jurisdiction. *See ALS Scan, Inc. v. Digital Service Consultants, Inc.,* 293 F.3d 707, 716 n. 3 (4th Cir.2002) (finding district court's denial of jurisdictional discovery, due to Plaintiff's conclusory allegations and failure to proffer further material facts, did not abuse discretion). Therefore, Plaintiff's request for further jurisdictional discovery will be denied.

**B. Defendants' 12(b)(6) motion for failure to state a claim**

Defendants argue that Count IV of the Complaint fails to state a claim upon which relief can be granted. The Fourth Circuit permits dismissal for failure to state a claim only if "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor," it still appears certain that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir.1999). Under the general pleading requirements of the Federal Rules, a plaintiff's complaint ordinarily needs only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(b). Certain special matters, however, such as fraud and conspiracy, demand more. *See* FED. R. CIV. P. 9(b). To preserve her claims in Count IV, Plaintiff's allegations must satisfy both the general pleading requirements of Rule 8 as well as the heightened requirements of Rule 9.

**1. Fraudulent concealment and conspiracy under Rule 8**

Plaintiff has satisfied the low threshold of Rule 8 by generally alleging facts upon

---

**5.** Plaintiff cites *Combs v. Bakker* to support her discovery request. 886 F.2d 673, 676 (4th Cir.1989). *Combs,* however, is inapposite because it simply addresses the possibility of jurisdictional discovery when a court's exercise of jurisdiction depends on disputed factual questions. *Id.*

which valid claims for fraudulent conceal-ment and conspiracy could ultimately rest.

### a. Fraudulent concealment

■ Defendants argue dismissal is proper because Plaintiff's claim of fraudu-lent concealment fails to allege all of the essential elements of the tort. Defs.' Mot. to Dismiss at 2. Under Maryland law, the elements of fraudulent concealment are: "1) that the defendant owed a duty to the plaintiff to disclose a material fact, 2) that the defendant failed to disclose that fact, 3) that the defendant intended to defraud or deceive the plaintiff, 4) that the plaintiff took action in justifiable reliance on the concealment, and 5) that the plaintiff suf-fered damages as a result of the defen-dant's concealment." *Deckelbaum v. Coot-er, Mangold, Tompert & Chapman, P.L.L.C.*, 292 B.R. 536, 540 (D.Md.2003) (citing, *inter alia, Green v. H & R Block*, 355 Md. 488, 735 A.2d 1039, 1059 (Md. 1999)).

■ Defendant Brush maintains it owed Plaintiff no duty to disclose. Under Maryland law, a duty to disclose can arise either "when one party is in a fiduciary or confidential relationship with the other," or "when one party makes a partial and frag-mentary statement of fact." *Estate of White ex rel. White v. R.J. Reynolds To-bacco Co.*, 109 F.Supp.2d 424, 431 (D.Md. 2000) (internal citations and quotations omitted) (citing *Brager v. Friedenwald*, 128 Md. 8, 97 A. 515 (1916)). Absent a special relationship, silence alone does not constitute fraud, but where "in addition to a party's silence, there is any statement, word, or act on his part, which tends affir-matively to the suppression of the truth, or to a covering up or disguising of the truth, or to a withdrawal or distraction of a par-ty's attention from the real facts," he may be liable for fraudulent concealment.[6] *Lu-bore v. RPM Associates, Inc.*, 109 Md.App. 312, 674 A.2d 547, 556 (1996) (internal citations omitted).

Plaintiff alleges that Defendant Brush had a duty to disclose to her because it had partially disclosed facts. Among other charges, she asserts that Defendant Brush publicly stated that the 2 microgram stan-dard was safe for all persons when it knew that this standard was not safe for those susceptible to beryllium. Compl. ¶ 41. Accepting this allegation as true and draw-ing all reasonable factual inferences in Plaintiff's favor, as is necessary in a mo-tion to dismiss, the Court finds that this statement amounts to a suppression of truth intended to defraud, and one upon which Plaintiff asserts she relied to her detriment. Compl. ¶ 45. Thus, Plaintiff has satisfactorily plead the duty element of her fraudulent concealment claim.

Defendant Brush incorrectly asserts that such partial or fragmentary suppres-sions of truth must be made to the plaintiff to constitute fraud. To the contrary, "Ma-ryland law has long allowed plaintiffs to sue for injuries caused by fraudulent mis-representations made to third parties," so long as the plaintiff could reasonably have been expected to act or refrain from action in reliance upon the misrepresentation.

---

**6.** Defendant cites *Morgan v. Brush Wellman, Inc.*, 165 F.Supp.2d 704 (E.D.Tenn.2001) and *Harris v. Brush Engineered Materials, Inc.*, No. 04–598, slip op. at 4 (S.D.Miss. Feb. 18, 2005), in which the courts granted motions to dismiss fraudulent concealment claims be-cause the same defendants had no duty to disclose. These cases are inapposite, howev-er, because neither Tennessee nor Mississippi law recognizes a duty to disclose based on partial disclosures of fact, as does Maryland law. This distinction enables Plaintiff's claim against Defendant Brush to survive where those of plaintiffs Morgan and Harris could not.

*Maryland Nat. Bank v. Resolution Trust Corp.*, 895 F.Supp. 762, 772 (D.Md.1995); *contra Estate of White*, 109 F.Supp.2d at 430.[7] Here, Defendant Brush's alleged partial disclosure and omission functions as a misrepresentation, which Plaintiff further alleges she relied upon before agreeing to work with beryllium products. Compl. ¶ 45.[8] Thus, Plaintiff has generally alleged facts upon which a valid fraudulent concealment claim could ultimately stand.

### b. Conspiracy

 Defendants then argue that Plaintiff's civil conspiracy claims are legally insufficient to withstand dismissal. In Maryland, "a civil conspiracy is a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or means employed must result in damages to the plaintiff." *BEP, Inc. v. Atkinson*, 174 F.Supp.2d 400, 408 (D.Md.2001) (citing *Green v. Washington Sub. San. Comm'n*, 259 Md. 206, 269 A.2d 815, 824 (1970)). A clear agreement to conspire is necessary because the "[i]ndependent acts of two wrongdoers do not make a conspiracy." *Murdaugh Volkswagen, Inc. v. First Nat. Bank of South Carolina*, 639 F.2d 1073, 1076 (4th Cir.1981). The conspired unlawful act does not have to be criminal, but requires "the violation of a legal right committed knowingly to create a cause of action." *BEP*, 174 F.Supp.2d at 409 (citing *Columbia Real Estate Title Ins. Co. v. Caruso*, 39 Md.App. 282, 384 A.2d 468, 472 (1978)). Conspiracy is not a tort on its own, but is dependent on some underlying tort that caused injury to the plaintiff. *Estate of White*, 109 F.Supp.2d at 428 (citing *Alexander & Alexander, Inc. v. B. Dixon Evander & Assoc.*, 336 Md. 635, 650 A.2d 260, 265 n. 8 (1994)).

Here, Plaintiff has plead the elements of conspiracy under Rule 8. She has alleged two different combinations of two or more persons conspiring to fraudulently conceal: first, Defendant Brush and the AEC, and second, Defendant Brush and other beryllium manufacturers. She has also generally stated a claim for fraudulent concealment, an underlying tort sufficient to constitute an unlawful act.[9] Be-

---

**7.** Although *Estate of White* claims that Maryland law supports no fraudulent misrepresentation cause of action for statements made to third parties, both that case and the case cited in support, *Parlette v. Parlette*, do not rule on that basis. *Parlette v. Parlette*, 88 Md.App. 628, 596 A.2d 665, 669 (1991). Both *Estate of White* and *Parlette* find for the defendants primarily due to a lack of evidence showing the plaintiffs' reliance upon the defendants' statements. Rather than holding that Maryland law supports no fraudulent misrepresentation cause of action for statements made to third parties, *Parlette* in fact suggests that third parties can prevail on fraudulent misrepresentation actions so long as they are "able to prove the detrimental reliance which is so critical to a fraud claim." *Parlette*, 596 A.2d at 669.

**8.** *Estate of White* is in accord because that court granted summary judgment primarily because Plaintiff had no evidence that he re- lied upon the defendants' statements. *Estate of White*, 109 F.Supp.2d at 431 (stating that defendants' statements "did not create a duty to speak ... because there is no evidence [Plaintiff] saw or relied on [them] or in any other way entered a special relationship" with the defendants). Here, taking all inferences in Plaintiff's favor, the Court must assume Plaintiff's allegations that she both saw and relied on Defendant Brush's statements are true.

**9.** Defendant argues that Plaintiff fails to plead an unlawful purpose or unlawful means, an act in furtherance of the conspiracy, or any damages to her. (Defs.' Mot. to Dismiss at 9.) If Plaintiff satisfactorily pleads the elements of fraudulent concealment, however, she also will have plead each of these elements of conspiracy. Defendant's citation to *Harris v. Brush Engineered Materials, Inc.* is inapposite because the court there had dismissed the

cause she asserts her reliance on the fraudulent concealment, she has also alleged sufficient personal damage due to the conspiracy.

■ Defendants argue correctly that to the extent that Plaintiff's conspiracy claims are based upon an attempt to defraud the federal government, they are preempted under *Buckman Co. v. Plaintiff's Legal Comm.*, 531 U.S. 341, 353, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001). *See Morgan v. Brush Wellman*, 165 F.Supp.2d 704, 722 (E.D.Tenn.2001) (stating plaintiff's allegations that Brush defrauded an agency of the federal government conflict with the government's ability to set policy consistent with its objectives and are thus preempted). Plaintiff's claim that Defendant Brush conspired with other beryllium processors to persuade the EPA and OSHA to reaffirm the existing standard for beryllium exposure is preempted under *Buckman.*

Plaintiff, however, alleges two other conspiracies in which Defendant Brush and its co-conspirators attempted to defraud beryllium workers and the public, both groups of which she is a member. Compl. ¶ 42(a), 43. These claims rely on traditional state tort law and are not preempted by *Buckman. See Dawson v. Ciba–Geigy Corp.*, 145 F.Supp.2d 565, 573 (D.N.J.2001) ("*Buckman* thus clarified that traditional state tort law claims ... are not necessarily preempted" if no federal cause of action supplants them.). Thus, Plaintiff has also generally alleged facts upon which a valid conspiracy claim could ultimately stand.

2. *Rule 9(b)'s particularity requirements*

While each of the claims, as explained above in Section II–B–1, has sufficient facts to remain viable under Rule 8, Rule 9(b) demands greater specificity than Plaintiff has provided in her Complaint. Each claim will therefore be dismissed with leave to amend.

### a. *Fraudulent concealment*

The parties dispute the proper application of Rule 9(b) to Plaintiff's fraudulent concealment claim. Defendants argue that, even if Plaintiff has generally plead each element of fraud, her claim does not satisfy the heightened pleading requirement of Rule 9(b), which demands that all claims of fraud be plead with particularity.[10] FED. R. CIV. P. 9(b). A plaintiff's "lack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n. 5 (4th Cir.1999). Plaintiff counters that Rule 9(b) does not derail her claim because particularity cannot be met in a concealment case. Pl.'s Opp'n to Defs.' Mot. to Dismiss at 9 (citing *Shaw v. Brown & Williamson Tobacco*, 973 F.Supp. 539, 552 (D.Md.1997) (stating "an omission cannot be described in terms of the time, place, and contents") (internal quotation and citation omitted)).

The Court sees no reason to ignore Rule 9(b)'s mandate in this case. Although the *Shaw* court stated that the rule's "particularity requirements are less strictly applied" in fraudulent concealment cases, that court applied its "relaxed Rule 9(b) analysis" only to the plaintiff's claim of omission. *Shaw*, 973 F.Supp. at 552. Likewise, the supporting cases cited in *Shaw* only find the particularity requirement inapplicable to claims of omission of

---

fraudulent concealment claim. Without that claim, the conspiracy charges necessarily failed because they had no underlying tort to sustain them.

10. Rule 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." FED. R. CIV. P. 9(b).

material fact. *See Flynn v. Everything Yogurt*, 1993 WL 454355, *9 (D.Md.1993) (stating that the "more stringent requirements of Rule 9(b) do not apply to omissions"); *Bonfield v. AAMCO Transmissions, Inc.*, 708 F.Supp., 867, 875 (N.D.Ill. 1989) (stating "an actionable omission obviously cannot be particularized as to 'the time, place, and contents of the false representations' or 'the identity of the person making the misrepresentation.'"); *see also Swedish Civil Aviation Admin. v. Project Management Enterprises, Inc.*, 190 F.Supp.2d 785, 799 (D.Md.2002) (finding adequate notice of fraud claim under Rules 8 and 9 due to the "thoroughness of [the plaintiff's] complaint and the fact that [the plaintiff] did plead several instances of alleged fraudulent behavior with specificity"). The reasoning of *Shaw* and similar decisions, however, does not nullify Rule 9(b)'s particularity requirement in cases like this, where Defendant Brush's liability for fraud is predicated on its "partial and fragmentary statement of fact," which presumably can be stated with particularity by Plaintiff. *See Estate of White*, 109 F.Supp.2d at 431.[11]

■ Although Plaintiff has generally plead the elements of her fraudulent concealment claim, she has not plead them with adequate particularity under Rule 9(b). Plaintiff satisfactorily alleges the general content of Defendant Brush's omissions, what it obtained through the fraud, and the damages caused by her reliance. Plaintiff fails, however, to specify (1) the partial and fragmentary statements of fact that created a duty for Brush to speak, (2) who made the statements, (3) when the statements were made, and (4) how she came to rely on them. To withstand dismissal, she needs to make these allegations with particularity and be especially clear about how and when she came to know of the partial disclosures noted in the Complaint and how she relied upon them. *See. e.g., Hearn v. R.J. Reynolds Tobacco Co.*, 279 F.Supp.2d 1096, 1114 (D.Ariz.2003) (stating that plaintiffs must allege with particularity how they relied on the truth of the partial statements representing fraudulent omissions).

*b. Conspiracy*

■ Plaintiff's conspiracy claims are similarly susceptible to dismissal. Claims of conspiracy to commit fraud must abide by Rule 9(b)'s particularity requirements. *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D.Md.2000) (citation omitted). "The more specific requirements for an allegation of conspiracy are that the pleader provide, whenever possible, some details of the time, place and alleged effect of the conspiracy." *Nat'l Constructors Ass'n v. Nat'l Elec. Contractors Ass'n, Inc.*, 498 F.Supp. 510, 528 (D.Md.1980) (internal citations and quotations omitted); *see also Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85

---

11. Other district courts have found that Rule 9(b) requires a plaintiff pleading fraudulent concealment "to specify the context in which the omission was made and the manner in which it misled." *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 101 (S.D.N.Y.1997); *see also Breeden v. Richmond Community College*, 171 F.R.D. 189, 195 (M.D.N.C.1997) (stating "even in a case of fraudulent concealment or omission, a plaintiff must comply with the heightened pleading requirements of [Rule] 9(b)"). The *Breeden* court elaborated that a plaintiff making a fraudulent concealment claim typically must allege with particularity the following: 1) the relationship or situation creating a duty to speak; 2) the event triggering that duty and/or the time period over which the fraudulent conduct occurred; 3) the general content of the omissions; 4) the identity of those responsible for failing to disclose the information; 5) what defendant obtained through the fraud; 6) why the plaintiff's reliance was both reasonable and detrimental; and 7) the damages caused by her reliance. *Breeden*, 171 F.R.D. at 195.

F.Supp.2d 282, 297 (S.D.N.Y.2000) ("A proper allegation of a conspiracy to commit fraud in a civil complaint must set forth with certainty facts showing particularly: (1) what a defendant or defendants did to carry the conspiracy into effect; (2) whether such acts fit within the framework of the conspiracy alleged; and (3) whether such acts, in the ordinary course of events, would proximately cause injury to the plaintiff.") (citations omitted); *Waller v. Butkovich*, 584 F.Supp. 909, 931 (M.D.N.C. 1984) ("Plaintiffs must expressly allege an agreement or make averments of 'communication, consultation, cooperation, or command' from which such an agreement can be inferred.") (citing *Weathers v. Ebert*, 505 F.2d 514, 517 (4th Cir.1974)).

■ Plaintiff's conspiracy claims are unable to withstand Defendants' motion to dismiss because she has not stated the claims' elements with the particularity required by Rule 9(b) and because they depend on an underlying tort. Plaintiff alleges both named ("the United States Atomic Energy Commission") and unnamed ("other beryllium processors") co-conspirators and various nebulous plans to defraud various parties (including "beryllium workers," "the public," and "the EPA and OSHA") over the course of several decades. Compl. ¶ 42(a),(c). To withstand dismissal, for each conspiracy she must specifically allege the agreement itself, including its time, place, and the identity of the co-conspirators. Plaintiff must also allege what Defendant Brush specifically did to carry the conspiracy into effect. Furthermore, unless and until Plaintiff's fraudulent concealment claim is rehabilitated, the conspiracy claims must be dismissed because they lack an underlying tort.

### c. Leave to amend

Plaintiff requests leave to amend her complaint should this Court find her pleadings insufficient. Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). The Supreme Court has said that refusal of such leave, without a justifying reason, is not only an abuse of discretion but "inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). This Court will therefore grant Plaintiff leave to amend her complaint as specified in the accompanying Order.

### 3. Punitive Damages

Defendants argue that Plaintiff has failed to state a sufficient claim for punitive damages in Counts II and IV and ask for their dismissal. Defs.' Mot. to Dismiss at 11. Because this Court will dismiss Count IV for failure to plead with particularity, it will only consider the motion to dismiss punitive damages in Count II at this time.

■ Plaintiff argues that her request for punitive damages for her strict liability claim (Count II) is adequate because she asserts that Defendant Brush either acted with certain knowledge of the dangerousness of its product or purposely avoided learning of its dangers in deliberate disregard of the welfare of the product's ultimate users. *See Owens–Illinois, Inc. v. Zenobia*, 325 Md. 420, 601 A.2d 633, 653 (1992) (stating that to establish actual malice in products liability cases "plaintiff must prove (1) actual knowledge of the defect on the part of the defendant, and (2) the defendant's conscious or deliberate disregard of the foreseeable harm resulting from the defect").

■ Maryland's standard for punitive damages, however, requires more from the complainant. Specifically, a plaintiff seeking punitive damages for any tort must "allege, in detail, facts that, if proven true, would support the conclusion that the act

complained of was done with actual malice." *Scott v. Jenkins*, 345 Md. 21, 690 A.2d 1000, 1008 (1997). Here, Plaintiff generally alleges that Defendant Brush knowingly manufactured and distributed a harmful product but does not include specific factual allegations to support that charge. Such pleading does not satisfy *Scott's* requirement of "a high degree of specificity from a plaintiff seeking punitive damages." *Id.* at 1007. Plaintiff's claim for punitive damages in Count II therefore will be dismissed.[12]

## III. CONCLUSION

For these reasons, Defendant BEMI's 12(b)(2) motion to dismiss for lack of personal jurisdiction will be granted and Defendants' 12(b)(6) partial motion to dismiss for failure to state a claim will be granted. Plaintiff will be given 15 days from the date of this Order to move for leave to file an amended complaint. A separate order consistent with the reasoning of this Memorandum will follow.

---

12. Of course, if subsequent discovery provides Plaintiff with a specific factual basis that justifies a request for punitive damages, she may move for leave to amend her Complaint accordingly.